### Evans v. Bullock et al.

(Decided June 21, 1935.)

S. F. BOWMAN for appellant.

WILLIAMS & DENNEY and JOEL M. JONES for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This action was filed in the Rockcastle circuit court by appellees and plaintiffs against appellant and defendant below, Dave Evans, seeking to enjoin him from maintaining an obstruction to a short country traveled passway, the entire length of which was between 50 and 60 yards, and which plaintiffs claim had been acquired as a part of the county public road system by prescription; it having been used by the public as alleged for a sufficient length of time under the proper claim of right for that purpose. The answer denied the material averments of the petition to entitle plaintiffs to such relief, and upon trial after preparation the court found that the short passway occupied the status claimed for it by plaintiffs and adjudged it to be a county public road, followed by an order mandatorily requiring defendant to remove the obstruction he had placed thereon, and, complaining of that judgment, he prosecutes this appeal.

We are somewhat handicapped in acquiring a completely accurate understanding of the case because of the record failing to point out cardinal points and directions, and we have been unable to supply that information by consulting a map of Kentucky. However, the improvised amateur diagrams and sketches filed by the witnesses with their depositions present the physical conditions sufficiently to enable us to dispose of the case.

There are, and have been for a great number of years, two public county roads in Rockcastle county,

one of which is known as the "Kinkaid Ridge Road," which traverses a ridge by the same name in the southwestern portion of the county. At a point on the road between a section of the county known as "Pongo," and a village across the line in Pulaski county known as "Plato" is defendant's farm, and upon which his residence is located. Near that point the other long existing county road known as the "Bullock Hill road" intersects with the Kinkaid Ridge road at practically right angles. Its intersection with the Kinkaid Ridge road is on the side opposite to defendant's residence. The land through which the intersecting road (Bullock Hill) runs, in approaching the intersection, was, until about a year before the filing of this action, a primitive forest, it having been owned until a short time before by some Wickliffe heirs, who were nonresidents of the county and who had no local agent representing them. During that long period members of the public in traveling over the neighborhood, in their efforts to reach the county seat and other places by the nearest route, began riding horseback· promiscuously over and across it through the woods which soon became riding paths, and later the most, if not all, of them began to be used by vehicles, until the land of the Wickliffe heirs was streaked and striped with passways that were traveled by pedestrians, horseback riders, and vehicles. One of them was the passway in controversy and which began in the manner indicated by travelers over the Bullock Hill road, in going from the Pongo section of the county via Hanford, located on that road, to Mt. Vernon, the county seat, and also by travelers from the county seat through Hanford to the Pongo section—instead of their continuing on the public road upon which they were traveling to the intersection detoured therefrom about 50 or 60 yards from the intersection, and which created the involved short cut-off whereby it made a small triangular piece of land bounded by the cut-off and the other two public roads, neither of which was longer than 60 yards.

Through mesne conveyances from the Wickliffe heirs defendant became the owner of the land across which the cut-off ran, and he proceeded to clear the land on that side of the Bullock Hill road where the cut-off was made and fenced it up, followed by this action filed by plaintiffs who are citizens of the Pongo

section of the county. They do not claim in their petition any private individual rights to an easement for passway purposes over the cut-off, but they do assert that it in the manner indicated became a part of the county public road system, and they seek an adjudication to that effect, to be followed by the abatement of the nuisance which they claimed defendant created by the obstruction he has erected therein. In this aspect of the case, it is doubtful if they show themselves entitled to maintain the action, since it is the clearly established rule that an individual acquires no right of action growing out of a public nuisance unless he can allege and prove some special injury to himself different from the common injury to the public. Doak v. Wakefield, 5 Ky. Op. 651; Maysville & Mt. Sterling Turnpike Road Co. v. Ratliff, 85 Ky. 244, 3 S. W. 148, 8 Ky. Law Rep. 933; Beckham v. Brown, 40 S. W. 684, 19 Ky. Law Rep. 519; Louisville Home Telephone Co. v. City of Louisville, 130 Ky. 611, 113 S. W. 855; Louisville Athletic Club v. Nolan, 134 Ky. 220, 119 S. W. 800, 23 L. R. A. (N. S.) 1019; Alsip v. Hodge, 214 Ky. 438, 283 S. W. 392; East Cairo Ferry Co. v. Brown, 233 Ky. 299, 25 S. W. (2d) 730; and other cases cited in those opinions. The remedies for the abatement of a public nuisance, because of which all members of the public are equally injured, are either by an injunction in the name of the proper public functionary, or by indictment and prosecution of the creator of the nuisance. Seifried v. Hays, 81 Ky. 377, 5 Ky. Law Rep. 369, 50 Am. Rep. 167. But, waiving the point of defective parties, and disposing of the case upon the theory that the action is maintainable by plaintiffs, we then conclude that the record fails to show their right to relief for which they prayed and which the court gave them.

Beginning with the early case of Bowman v. Wickliffe, 15 B. Mon. 84, 98, this court has held that it requires a great deal more convincing proof of the adverse user of another's land in order to create a prescriptive right to a passway that traverses uninclosed woodland than is required to establish the same right when the passway traverses cleared or inclosed land. The fact that the land is uninclosed, as the court said in that case, "tends strongly, if not conclusively, to repel any presumption that might otherwise arise, in such a case,

from long continued use of the grant of the right of way by the proprietor of the land. The mere use of this road, then, during the period of time that the land through which it passed was uninclosed woodland, can not be regarded as proving anything detrimental to the rights of the proprietors of the land." That case was referred to with approval in the case of **Wray v. Brown**, 155 Ky. 757, 761, 160 S. W. 488, 490. In the course of the latter opinion we said: "There are few owners of uninclosed woodland who pay any attention to the amount of travel over it or through it. * * * But when there is much travel through inclosed or cultivated land it is, as a rule, a serious inconvenience as well as source of annoyance to the owner, and injury to his property," and the court continues by saying that as to the latter status of the traversed land it will be presumed that the use was with the knowledge of the owner, and that, if he permits it for the requisite period without attempting to interfere, his action will be taken as his implied consent thereto, and it was also said: "While the mere fact that he permits the public to travel at liberty through uninclosed woodland might not raise any presumption of a grant."

That case was followed by the later one of Breeding v. Bentley, Judge, 226 Ky. 238, 10 S. W. (2d) 842, and in that opinion a copious excerpt from the Brown opinion is inserted with approval, followed by the citation of the cases of Winlock v. Miller, 167 Ky. 717, 181 S. W. 330; Davidson v. Nantz, 177 Ky. 50, 197 S. E. 520, 521; Smith v. Oliver, 189 Ky. 214, 224 S. W. 683, and Stephens v. Hamblin, 195 Ky. 428, 242 S. W. 597. The question was again before us in the case of Barnett v. Toole, 253 Ky. 198, 69 S. W. (2d) 378, and the doctrine of the above cases was again approved and applied. See, also, Snyder v. Carroll, 203 Ky. 320, 262 S. W. 290.

Furthermore, in the case of Terry v. Boston, 246 Ky. 222, 54 S. W. (2d) 909, there was presented the question, which also appeared in some of the cases supra, of the effect of detours whereby additional passways were made from an acknowledged legal and rightful passway through and over land, and in which we said that the temporary detours for the convenience of the traveler (because the detour was temporarily more passable, or for other reasons) did not themselves be-

come passways that might be ripened into a right by continued user. Here, as we have seen, the Bullock Hill road, about 50 yards from where the involved cut-off in this case departed from it, intersected the Kinkaid Ridge road at practically right angles, and about 50 yards from the junction of those two roads the cut-off reached and entered upon the Kinkaid Ridge road, thus making the small triangle of land that we have above referred to. So that travelers from Hanford to the Kinkaid Ridge road could reach it from the point where the cut-off departed from it by continuing their journey for only 50 yards further and then turning to the left on the Kinkaid Ridge road and traveling it in the direction of the Pongo section, and likewise travelers from the latter section to Hanford and from thence to the county seat could reach the Bullock Hill road by continuing on the Kinkaid Ridge road for only about 50 yards where the Bullock Hill road intersected it, and then continuing their journey over that road. Travelers, therefore, over the two roads could not possibly gain much more than 50 yards by using the cut-off, which was never made a public road by any sort of statutory proceeding, nor was it ever worked or maintained by any public direction in the manner provided by law. On the contrary, the short space of the Bullock Hill road, from the point where the cut-off left it up to its intersection with the Kinkaid Ridge road, was and is the public road that was worked and maintained according to the provisions of the statute and not any part of the cut-off, although some parties, and at one time, perhaps, the overseer of that section of the road, did on his own personal account put some rock in a mudhole in one part of the involved cut-off. The authorities, supra, clearly show the existence of no such right as is claimed by plaintiffs in this case.

Wherefore the judgment is reversed, with directions to set it aside and to dismiss the petition.